[Crim. No. 4978.   Second Dist., Div. Three.   July 29, 1953.]

THE PEOPLE, Respondent, v. MYRTLE BAKER, Appellant.

John J. Bradley for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was convicted in a nonjury trial of violating section 337a, subdivision 2, of the Penal Code in that she unlawfully kept and occupied a room with papers and paraphernalia for the purpose of recording bets on a horse race. (She was also charged with violating subdivision 1 [bookmaking] and subdivision 4 [recording a bet], but she was acquitted of those charges.) She appeals from the judgment of conviction, and the order denying her motion for a new trial. Her contention is that the evidence was insufficient to support the judgment or the order.

Officer Bradley, an expert in bookmaking activities, testified that on August 11, 1952, about 3:20 p. m., he was observing a music or record shop at 4419 Avalon Boulevard in Los Angeles; at that time he was in a grocery store directly across Avalon Boulevard from the shop; he saw the defendant standing behind the counter in the shop; then he saw a woman enter the shop and go to the counter in front of defendant; the defendant and the woman stood there a few seconds, and then defendant went to an adding machine which was about three feet to her left on the counter; she manipulated the machine several times; a few minutes later, a man entered the place, leaned over the counter and stood there a very short time facing defendant; then defendant went to the adding machine and manipulated the machine several times; a few minutes later, another man went in and had a similar transaction, following which defendant manipulated the adding machine; none of those three persons, who entered the shop, took anything into or out of the shop in his or her hands; about 3:35 p. m., while defendant was seated by a window in front of the counter, a woman came out of 4421 Avalon Boulevard (next door) and entered the shop; defendant then went behind the counter to a place near the adding machine; after the woman had stood at the counter in front of defendant a few seconds, the defendant manipulated the adding machine; thereafter the woman went away; about five minutes later, a Mrs. Rogers entered the shop and she and defendant stood next to the counter a few minutes; then defendant operated the adding machine, reeled off some of the adding machine tape, tore the tape off, folded and handed it to Mrs. Rogers, who put it in her dress pocket; then the officer entered the shop and, while defendant was about three feet from him, asked Mrs. Rogers to remove the articles from her pocket; she removed two articles and said that was all she had; he asked her to see if there were other papers in her pocket; then she removed the adding machine tape and handed it to him.

The tape, referred to by the officer, was received in evidence as Exhibit A. It was stipulated that it was a betting marker.

Officer Bradley testified further that, after receiving the tape, he arrested the defendant and began searching below the counter; at that time defendant was standing next to the officer (witness), and Officer Harris was standing next to defendant, and Mrs. Rogers and Officer Scott were sitting in chairs; then a Mr. Griffith entered the shop, walked toward defendant and said, "Where is my money I got coming on

that horse. Give half of it to this little lady here [Mrs. Rogers]. I told her I was going to give her part of it if the horse won''; Officer Scott asked Griffith if he bet a parlay; he replied that he bet ''Quaiate,'' and he then pointed to a newspaper, which he had brought with him, and said, ''Here it is in the second race''; the officer (witness) found that a horse by that name was listed in the second race at Del Mar on that day; after a few minutes, Griffith said, ''Mrs. Baker [defendant], may I have my money now?''; she replied, ''What money?''; Griffith said, ''The money I have coming on that horse I bet. I know he won and he must have paid good''; a few minutes later, he said, ''Mrs. Baker, can I get my money that I have coming?''; she said, ''What money? I don't owe you any money.'' Defendant objected to, and moved to strike out, the testimony as to what Griffith said, but the objection was overruled and the motion was denied. The officer testified further that he found three other slips of adding machine tape (Exhibits B, C and D) in the shop, one of which slips was in the wastebasket; he also found a newspaper (Exhibit E )on the counter next to the adding machine, and the last page of the paper—upon which there were racing entries—was the top side of the paper as it lay on the counter; Exhibit A, the tape, which ''contains a series of figures separated by spaces'' is a betting marker; the first series starts with the number 621, which is the identifying number of the bettor—it might be the address of the bettor; the next number 400 indicates the track—Del Mar; the next number 200 indicates the post position of the horse—the zeros have no significance; the next number 600 indicates the race; the next number 1 is a $1.00 show wager; the tape contains 16 groups of figures and all of those, except one which is crossed out and one which is the total of all the groups, are records of wagers on horses running on that date; the last series on the tape starts with 4421, which is the identifying number of the bettor, and is the same number as the address of the place next door to defendant's shop (which place next door is the address of one of the women who had entered defendant's shop) ; Exhibit C is an owe sheet; he arrested Mrs. Rogers about a week later and found slips of adding machine tape, similar to Exhibit A, in a room where she was arrested.

Miss Thomas, called as a witness by defendant, testified that at the time involved here she was employed in an adjustment bureau at 4421 Avalon Boulevard; on the afternoon in question she took some cancelled checks from that place and

went to defendant's shop and added the checks on the adding machine; one of the officers examined the checks; she did not see defendant operate the adding machine on that day.

Defendant testified that she has a record shop at 4419 Avalon Boulevard; the adding machine was there for sale— it was from a grocery store; Miss Thomas was in her shop that afternoon; one of the officers asked her (Miss Thomas) what she had in her hand, and she showed him some cancelled checks; Mrs. Rogers (also known as Mrs. Lorick) was in her shop that afternoon when the officers came in; Officer Bradley told her to take things out of her pocket; she took a piece of paper, Exhibit A, from her pocket; that paper does not look like anything that she (defendant) has written; while the officers were there, a man by the name of Griffith came into the shop; she knew Griffith—he had an office a few doors from her shop; when he came in he said, "Miss Baker, give me my money"; she did not answer him at first because she did not know what he was talking about; he was under the influence of liquor; he also said, "Miss Baker, give me my money. I bet a horse and I won and I want my money"; she replied that she did not owe him any money and "You haven't bet no horse with me"; when the officers were taking her out of the shop, after the arrest, she said to Griffith that he knew that he had told lies about giving her a bet; he then said that he was only kidding; she did not accept any wager from Griffith on that day or any other day.

Officer Bradley testified, in rebuttal, that when the officers and defendant were going out the door of the shop the defendant said, "Mr. Griffith, I don't know why you would do that to me. You know I haven't taken any bet from you"; Griffith replied, "I'm sorry"; she said, "Don't tell me you are sorry. What I should do to you is pop you right in the mouth."

The defendant was in the record shop which was owned and operated by her. She operated the adding machine, tore some tape therefrom, and handed it to Mrs. Rogers. That tape was a betting marker. Another tape found in the shop was an owe sheet. A newspaper was on the counter next to the adding machine, and the last page of that paper, which contained racing entries, was visible to a person standing by the machine. The evidence was sufficient to support a finding that the defendant kept and occupied a room with papers and paraphernalia for the purpose of recording bets on a horse

race. The evidence supports the judgment and the order denying the motion for a new trial.

Appellant asserts that the court erred prejudicially in receiving the testimony of the officer as to statements made to defendant by Griffith (who came into the shop) to the effect that he wanted the money that was coming to him on a bet he had made on a horse. She argues that the evidence was hearsay. The statements were accusatory. When he first made the statement, defendant did not say anything in reply thereto. After a few minutes, when he made the statement a second time, she said she did not owe him any money. She did not deny that she took a bet from him until she was leaving the shop with the officers and then she said that Griffith had lied about giving her a bet. The evidence was admissible. As stated in *People* v. *Cacioppo*, 34 Cal. App.2d 108, at page 111 [93 P.2d 194]: ''It is the rule that declarations or statements made in the presence of a party are received in evidence, not as evidence in themselves, but to understand what reply the party to be affected by the statement should make to the same. If he is silent when he ought to have spoken, the presumption of acquiescence arises. In this sense admissions may be implied from conduct.'' The statements of Griffith to defendant were not admissible for the purpose of proving that defendant did owe Griffith money or that Griffith had placed a bet on a horse with defendant, but the statements coming in the midst of an investigation and search of the room by the officers, and being made in the presence of defendant, constituted a circumstance to be considered. Such a statement, if made by telephone during an investigation similar to the investigation here, would have been admissible for the purpose of proving the purpose for which the room was used. (*People* v. *Reifenstuhl*, 37 Cal. App.2d 402, 405 [99 P.2d 564].) Under the circumstances in the present case, where the defendant was present and heard the statements of Griffith, the statements were material on the issue as to the purpose for which defendant used the room.

The judgment and the order are affirmed.

Shinn, P. J., concurred.

Vallée, J., concurred in the judgment.